C. E. THOMASON AND J. E. CURRY v. J. C. BESCHER AND W. M. BESCHER.

(Filed 11 December, 1918.)

1. **Contracts — Unilateral Contracts — Options — Seals — Vendor and Purchaser—Consideration—Timber—Specific Performance.**

Payment of the nominal consideration recited in a contract, under seal, to convey the timber upon lands described, is not necessary to have been made in order that the one taking the option may enforce specific performance of its terms, when he has exercised the right within the terms of the agreement, tendered the agreed purchase price within the stated period, and has at all times been ready, able and willing to comply with

his obligations thereunder; and the proposed seller may not avoid his own obligations by notifying the proposed purchaser beforehand, or at any time within the life of the option, that the same is withdrawn by him, and successfully set up a failure of consideration as a defense to the suit for specific performance.

**2. Contracts—Unilateral Contracts—Seals—Options—Timber—Specific Performance.**

Whether the seal to a written instrument granting an option on, or unilateral contract to convey, the timber upon lands, conclusively imports a consideration, or the solemnity of the act imports such reflection and care that a consideration is regarded as unnecessary, such instructions are considered binding agreements by the common-law courts, apart from the question of whether the nominal consideration therein recited has in fact been paid, and are likewise enforcible in the courts of this State, there being no statute on the subject and nothing unconscionable or inequitable in the contract sought to be enforced.

**3. Contracts — Unilateral Contracts — Options — Consideration — Purchase Price.**

Where the proposed purchaser, under a written unilateral contract to convey land, under seal, has availed himself of his option, and has performed as far as possible the conditions required of him, and sues for specific performance upon the breach of the contract by the proposed vendor, the consideration is not restricted to the seal or the nominal amount usually present in bargains of this character, but extends to and includes the purchase price agreed upon.

**4. Contracts—Options—Unilateral Contracts—Timber—Deeds and Conveyances—Vendor's Purchaser—Parties—Specific Performance.**

Where the proposed vendor in a contract to convey lands has thereafter sold a part of the lands to another, and the proposed purchaser has accepted the option, made tender of the purchase price, and has in all other respects complied with its terms, and brings suit against the proposed seller and his vendor for specific performance, standing always ready, able and willing to perform his obligations under the contract, and defendants deny all liability thereunder: *Held,* the plaintiff is entitled to enforce specific performance of the entire contract against both the proposed seller and his vendor. *Ward v. Albertson,* 165 N. C., 218, cited and applied.

ACTION to enforce specific performance of a contract to sell timber, tried before *Long, J.,* and a jury, at July Term, 1918, of RANDOLPH.

There were facts in evidence tending to show that on 18 June, 1918, J. C. and W. M. Bescher, two tenants in common in a tract of land, entered into a written contract, under seal, giving plaintiff Thomason the option to purchase the timber thereon, at $6,000, within sixty days, or by 18 August, 1917, the said contract being in terms as follows:

"Know all men by these presents, that in consideration of the sum of one dollar to us in hand paid by C. E. Thomason, of Davidson County,

N. C., the receipt of which is hereby acknowledged, we, J. C. and W. M. Bescher, do hereby contract and agree with said C. E. Thomason to sell and convey unto said C. E. Thomason and his heirs and assigns all that certain tract or parcel of timber and roads over land, with sawmill sites, situate, lying and being in Concord Township, Randolph County, adjoining the lands of B. M. Pierce and others, and known as the John S. Bescher place, and containing 715 acres, more or less, and that we will execute and deliver to said C. E. Thomason and his heirs and assigns, at his or their request, on or before 18 August, 1917, a good and sufficient deed for the said timber and roads and mill sites with full covenants and warranty, provided and upon condition, nevertheless, that the said C. E. Thomason, his heirs and assigns, pay us or our representatives or assigns the sum of $6,000 in cash, or equivalent, it is understood and agreed that the said sale is to be made at the option of the said C. E. Thomason or his heirs or assigns, to be exercised on or before 18 August, 1917.

"And it is further understood and agreed that if the said C. E. Thomason and his heirs and assigns shall not demand of us the deed herein provided for and tender payment as herein provided for and on or before said 18 August, 1917, then this agreement is to be null and void, and we are to be at liberty to dispose of the timber to any other person or to use it as we may desire in the same manner as if this contract had never been made; but otherwise this contract is to remain in full force and effect.

"And to the true and faithful performance of this agreement we do hereby bind myself and my heirs, executors, administrators and assigns.

"Witness our hands and seals, this 18 June, 1917. All old-field pine is hereby excepted, all other included."

Coplaintiff J. F. Curry having acquired one-half interest in said contract prior to institution of suit. That prior to 23 June, 1917, plaintiff Thomason, then holding the contract, notified one of the defendants that he would take the timber, etc. . . . That plaintiff tendered the purchase price on 7 August, 1917, and had always been ready and willing to pay it. There was denial of obligation on the part of defendants, with evidence tending to show that before any acceptance or notice thereof defendants had, in writing, notified plaintiffs that they elected to terminate the contract.

On issues submitted, the jury rendered the following verdict:

1. At the time of the execution of the option on 18 June, 1917, and as a consideration therefor, did the plaintiff C. E. Thomason pay the one dollar to the defendants, as recited in the said option? Answer: "No."

2. Did the plaintiffs thereafter notify the defendants, or either of

them, and prior to 23 June, 1917, that they would take the timber, roads and mill sites, under the terms of the said option set up in the complaint and would be down the following week to pay the price and take the deed therefor? Answer: "Yes."

3. Were the plaintiffs at all times able and willing to pay the purchase price of $6,000 for the property, as recited in the option, in event deed was made therefor? Answer: "Yes."

4. Did the defendants on 23 June, 1917, serve the plaintiffs with the following notice: "This is to notify you that the option given you on your timber, Randolph County, on Monday, the 18th of June, is withdrawn and we will not convey the timber according to its terms"? Answer: "Yes."

Judgment on verdict for plaintiff, and defendant excepted and appealed.

*Raper & Raper for plaintiff.*
*J. A. Spence for defendant.*

HOKE, J. It is the accepted principle of the common law that instruments under seal require no consideration to support them. Whether this should rest on the position that a seal conclusively imports a consideration or that the solemnity of the act imports such reflection and care that a consideration is regarded as unnecessary, such instruments are held to be binding agreements enforcible in all actions before the common-law courts.

Speaking to the question in *Harrell v. Watson,* 63 N. C., 454, *Pearson, C. J.,* said: "A bond needs no consideration. The solemn act of sealing and delivering is a deed—a thing done which, by the rule of the common law, has full force and effect without any consideration. *Nudum pactum* applies only to simple contracts."

A similar position is stated with approval in Prof. Mordecai's Lectures, at p. 931, and Dr. Minor in his Institutes, pt. 1, vol. 3, p. 139, says: "In all contracts under seal a valuable consideration is always presumed, from the solemnity of the instrument, as a matter of public policy and for the sake of peace, and presumed conclusively, no proof to the contrary being admitted either in law or equity so far as the parties themselves are concerned."

While there is much diversity of opinion on the subject, we think it the better position and sustained by the weight of authority that the principle should prevail in reference to these unilateral contracts or options when, as in this case, they take the form of solemn written covenants under seal, and its proper application is to render them binding agreements, irrevocable within the time designated, and that the

40—176

stipulations may be enforced and made effective by appropriate remedies when such time is reasonable and there is nothing oppressive and unconscionable in the terms of the principal contract.

In *Watkins v. Robertson*, 105 Va., 269, the question is directly presented, and in a convincing and learned opinion by *Judge Cardwell* the conclusion of the Court on the subject is announced to the effect: "That an option under seal for the sale of shares in a joint stock company is a binding offer from which the promisor cannot recede during the time stipulated for in the option, and if accepted during that time constitutes a contract the specific performance of which a court of equity will compel. The option is in the nature of a continuing offer to sell, and, being under seal, must be regarded as made upon a sufficient consideration, and no proof to the contrary will be received at law or in equity."

In *Willard v. Tayloe*, 75 U. S., 557, *Associate Justice Field*, delivering the opinion, it was held, among other things: "A covenant in a lease giving to the lessee a right or option to purchase the premises leased at any time during the term is in the nature of a continuing offer to sell. The offer thus made, if under seal, is regarded as made upon sufficient consideration, and therefore one from which the lessor is not at liberty to recede." And the position is approved by other courts of the highest authority and by writers of established repute. *O'Brien v. Boland*, 166 Mass., 481; *Weaver v. Bunn*, 31 W. Va., 736; *McMillan v. Ames*, 33 Minn., 257; Pomeroy on Contracts, sec. 387, note 1; 9 Cyc., 287.

In the citation to Pomeroy, a work of recognized merit, chiefly on the doctrine of specific performance, it is said in the note referred to: "If the unilateral contract is sealed and the common-law effect of the seal has not been taken away or changed by statute, it appears that the promissory offer contained in the writing cannot be recalled before the time for acceptance has expired." And in 9 Cyc.: "The common-law rule that when an offer is made under seal it cannot be revoked, applies to options given under seal. The seal renders a consideration unnecessary, and if the option is exercised by acceptance of the offer within the time limited the agreement will be specifically enforced or damages may be recovered for its breach notwithstanding an attempted revocation."

We are not unmindful of the position that in equity causes the Court looks beyond the form and will usually refuse to exert its powers in aid of a sealed instrument, its collection and enforcement, except when there is a valuable consideration. In our own Court, the case of *Woodal v. Prevatt*, 45 N. C., 199, being an apt illustration of the principle. But these options, containing a continuing offer to sell and constituting a contract, binding on the parties because in the form of a covenant under seal, serve their purpose in keeping the offer open for

the time specified and preventing a withdrawal by the vendor. On acceptance and offer to perform within the time, a bilateral contract is then constituted which, on breach, is enforcible by appropriate remedies, legal or equitable. And in case of action for specific performance, the consideration is not restricted to the seal or the nominal amount usually present in these bargains, but extends to and includes the purchase price agreed upon. This position is recognized with us in the case of *Ward v. Albertson,* 165 N. C., 218 and 222.

Speaking to the subject, the Court said: "In reference to the $5 paid by plaintiff as the consideration for his interest, it is the accepted position in this State that 'a binding contract to convey land, where there has been no fraud, mistake, undue influence, or oppression, will be specifically enforced, and, as a rule, the mere inadequacy of price, without more, will not affect the application of the principle' (*Combes v. Adam,* 150 N. C., 64, citing *Boles v. Candle,* 133 N. C., 528, and *Whitted v. Fuquay,* 127 N. C., 68); and where the contract has been perfected by acceptance within the time or proper tender of performance, on suit for specific performance, the real consideration is the contract price, which must be paid before the interest is finally acquired, in this instance the $1,000, and as to the option itself, which only provides for holding the privilege open for a short period of time and involving also the opportunity to effect a sale by the potential vendor, the $5 paid may very properly be held as a sufficient consideration to bind the party (*Alabama Ry. v. Long,* 158 Ala., 301; *Ross v. Parks, supra; Smith v. Bangham,* 156 Cal., 359; Elliott on Contracts, sec. 232.); and there is high authority for the position that in States where this matter has not been regulated by statute, the seal itself conclusively imports a consideration. *Watkins v. Robinson,* 105 Va., 269; *Willard v. Taylor,* 75 U. S., 557; *Adams v. Canal Co.,* 230 Ill., 469." And the statement, we think, presents the correct concept of these suits and is in accord with the authorities on the subject.

On the same question in the *McMillan v. Ames,* 33 Minn., *supra,* *Vanderburg, J.,* delivering the opinion, said: "It is true that equity will not lend its auxiliary remedies to aid in the enforcement of a contract which is inequitable, or is not supported by a substantial consideration; but at the same time it will not on such grounds interfere to set it aside. But no reason appears why equity might not have decreed specific performance in this case (had the land not been sold), because the substantial and meritorious consideration required by the Court in such case would consist in that stipulated in the instrument as the condition of a conveyance, performance of which by the plaintiff would have been exacted as a prerequisite to relief so as to secure to defendant mutuality in the remedy and all his rights under the contract." And

see, also, *Woodruff v. Woodruff,* 44 N. J. Eq., p. 349; 6 Pomeroy's Eq., sec. 773.

As heretofore stated, there are opposing decisions on the question, holding that a written option without valuable consideration, though under seal, may be recalled at any time before notice of acceptance given. Some of these, as pointed out in *Watkins v. Robertson, supra,* are dependent on statutes which change or modify the effect given to seals under the principles of the common law. In others, there being nothing in the record to present it, the mind of the Judges was not specially called to the distinctions existent and usually observable between a mere offer to sell without consideration and without seal and one that is effective as a binding agreement by reason of the seal. This is true in several cases in our own Court, as in *Timber Co. v. Wilson,* 151 N. C., 154, and *Paddock v. Davenport,* 107 N. C., 710. In both of these cases, however, it appears that there was notice of acceptance duly given within the time, thus constituting a bilateral contract between the parties, and the question of the effect of a seal on such contracts was in no way presented; and so in the well-considered case of *Winders v. Kenan,* 161 N. C., 628, there was a valuable consideration for the option, and relief was denied because there was no offer to perform within the time as the contract required.

So far as examined, we have found no case with us in which the question has been directly considered, and under the principles stated and on the facts of this record we are of opinion, and so hold, that the defendants are bound by their covenant under seal and not at liberty to withdraw their offer before the expiration of the time agreed upon.

The verdict having established that before any attempted withdrawal by defendants, plaintiff had notified one of the parties of acceptance would in any event be entitled to judgment as to that interest. And it further appearing that plaintiff has been at all times ready and able to comply, tendering the entire purchase money, at latest by 7th August, that defendants refused to accept the same and deny any and all obligation under the alleged contract, plaintiff, as held in *Ward v. Albertson, supra,* and other cases of like import, is entitled to have specific performance as to both interests, and the judgment to that effect is affirmed.

No error.